**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-61590-CV-ALTMAN**
**MAGISTRATE JUDGE REID**

ANTHONY MCINTYRE,

       Petitioner,

v.

DEP'T OF CORR.,

       Respondent.

## REPORT OF MAGISTRATE JUDGE

Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. His petition attacks the constitutionality of his judgment of conviction in Case No. 14001483CF10A, Seventeenth Judicial Circuit of Florida, Broward County.

The undersigned has reviewed the entire record, including the § 2254 petition. [ECF 1]. As discussed below, the petition should be DENIED.

## I.      Background

1

A.    <u>Information</u>

The state charged petitioner with attempted first-degree murder for the shooting of Tyrie Walker on January 12, 2014. [ECF 11-1, p. 6].[1] Petitioner went to trial.

B.    <u>Trial Testimony</u>

At trial, the state presented the following relevant testimony. Petitioner did not testify or present a case.

1.    *Tyrie Walker*

Walker knew petitioner from the neighborhood. [ECF 12-1, p. 322]. Before the shooting, Walker and petitioner had exchanged looks. [*Id.* pp. 323-25]. Walker knew that his girlfriend at the time, Ana Lara, had previously dated petitioner. [*Id.* p. 324].

On the day of the shooting, Walker was talking to Lara outside of her house. [*Id.* p. 327]. Petitioner walked by and he and Walker exchanged looks. [*Id.* pp. 326-27].

Walker had a disagreement with Lara and left her house. [*Id.* p. 328]. She sent him a text and he returned to her house at 8:00 p.m., when it was dark. [*Id.* pp. 328-29]. As Walker walked along a path in a common area, he noticed petitioner standing

---

[1] All page citations for ECF entries refer to the page-stamp number located at the top, right-hand corner of the page.

on the path and called his name. [*Id.* p. 330]. Petitioner turned around and immediately shot Walker four times. [*Id.* pp. 330-33]. As he did so, petitioner stood "three to four feet" from Walker with nothing covering his face. [*Id.* p. 331].

There are lights in the area where petitioner shot Walker and Walker was "[one] hundred percent" sure that he saw petitioner shoot him. [*Id.* pp. 329, 340]. After being shot, Walker went to Lara's house and told her that petitioner shot him. [*Id.* pp. 337-38].

Walker was transported to the hospital. [*Id.* p. 338]. A detective interviewed him there and Walker identified petitioner in a photo lineup. [*Id.* pp. 338-40]. Walker also identified petitioner in court as the shooter. [*Id.* p. 336].

### 2.   *Ana Lara*

On the day of the shooting, Walker left her house after an argument. [*Id.* pp. 365-66]. Lara sent Walker a text asking him to come back. [*Id.* p. 366]. Later that night, she heard "firecracker[]" sounds, after which a "nervous and sweating" Walker came to her back door and told her that petitioner had shot him. [*Id.* pp. 367-68, 375-76].

### 3.   *James Dees*

Dees is a deputy for the Broward County Sheriff's Office ("BCSO"). [*Id.* p. 381]. Dees responded to the shooting. [*Id.* p. 382]. As the paramedics treated Walker, he told Dees that petitioner had shot him. [*Id.* p. 386]. Walker was "lucid" when he

made the statement. [*Id.* p. 396]. Although it was dark outside, the area where petitioner was shot had "sufficient illumination [such that one] could see." [*Id.* pp. 388-89].

### 4.     *Joshua Kessler*

Kessler is a deputy for the BCSO. [*Id.* pp. 392-93]. He responded to the shooting with Dees. [*Id.* p. 393]. Walker told Kessler that petitioner had shot him. [*Id.* p. 395]. Kessler identified the crime scene and found "a few shell casings and some projectiles." [*Id.* p. 396]. The lighting in the area was low, but Kessler "could see and recognize somebody [he] had previously known in [those] conditions." [*Id.* p. 397].

### 5.     *James Ramirez*

Ramirez was a detective for the BCSO. [*Id.* p. 398]. Walker told Ramirez at the hospital that petitioner shot him. [*Id.* p. 400]. Later that night, Ramirez watched another deputy present a photo array to Walker, who again identified petitioner as the shooter. [*Id.* pp. 400-03]. Petitioner was "a hundred percent sure" that the person he selected had shot him. [*Id.* p. 409].

### 6.     *David Currie*

Currie is a detective for the BCSO. [*Id.* p. 417]. Currie investigated the crime scene and discovered "firearm-related evidence on the ground." [*Id.* pp. 422-23]. This evidence included five shell casings and two projectiles. [*Id.* p. 438]. There was

enough "ambient light" in that area for a "normal person . . . [to] be able to see something that was . . . a few feet away from [the person]." [*Id.* p. 435].[2]

C.    Verdict and Direct Appeal

The jury found petitioner guilty of the lesser-included offense of second-degree murder. [*Id.* p. 570]. The trial court imposed a 25-year mandatory minimum sentence. [ECF 11-1, pp. 9-13].

Petitioner appealed. Pertinently, he argued that the state improperly excluded his alibi witness, "Mr. Ceasar," whom he first sought to present "halfway through the trial[.]" [*Id.* pp. 83-84]. The Fourth District Court of Appeals ("Fourth District") rejected this argument and otherwise affirmed. [*Id.* pp. 83-86]. Regarding this argument, the Fourth District noted that petitioner failed to: (1) file a notice of alibi even though the state had filed its demand for the same; and (2) "offer the trial court any reason for his failure to comply with [Florida Rule of Criminal Procedure] 3.200." [*Id.* p. 86]. On October 27, 2016, the Florida Supreme Court denied review. [*Id.* p. 131].

D.    Relevant State Postconviction Litigation

Petitioner filed a *pro se* amended motion for postconviction relief pertinently alleging that: (1) petitioner's 25-year mandatory minimum sentence violated *Graham v. Florida*, 560 U.S. 48 (2010) ("claim 1"); and (2) counsel ineffectively

---

[2] The state presented additional testimony and evidence at trial.

failed to investigate and call alibi witnesses Jarawle Rishawn Caesar-Nation and Michelene Caesar ("claim 2"). [*Id.* pp. 186-202]. The postconviction court denied the motion for the reasons in the state's response. [*Id.* p. 233].

Petitioner filed a *pro se* appeal. Although he raised claim 1, he did not raise claim 2. *See generally* [*id.* pp. 237-52]. The Fourth District affirmed without comment.

E.    This § 2254 Case

Petitioner timely filed a § 2254 petition. [ECF 1]. There, he re-raises claims 1 and 2. *See* [*id.* pp. 5, 7]. *See also* [ECF 3]. The state filed a response and supporting documents. [ECF 10; 11; 12]. Petitioner replied. [ECF 16].

## II.    Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015). That is, "[a] state court's . . . determination of facts is unreasonable

only if no 'fairminded jurist' could agree with the state court's determination." *Id.* (citation omitted).

Under § 2254(d), "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,]" "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

But where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

### III.   Legal Analysis

A.   Claim 1

Claim 1 lacks merit.

#### 1.   *Petitioner's Argument*

Petitioner contends that he was a 17-year old juvenile when he committed the shooting and that, therefore, he is "entitled to judicial review and [the] possibility of early release." [ECF 1, p. 5]. *See also* [ECF 16, p. 5]. This, he contends, "is the only way that [he] would receive any meaningful opportunity for early release based upon maturation and rehabilitation[.]" [ECF 1, p. 5]. Absent a resentencing hearing where

he is given this opportunity, he contends that his 25-year mandatory minimum sentence violates the Eighth Amendment. [ECF 16, p. 3]. To support these contentions, he cites *Graham*. [ECF 3, p. 2].

2.      *State Court Decisions*

In rejecting this claim, the postconviction court reasoned: "The record [] reflects that [petitioner] understood the potential mandatory minimum term as well as the maximum penalty for the charged offense, which did not result in an unfair sentence for a juvenile tried as an adult." [ECF 11-1, pp. 227-28, 230]. The Fourth District affirmed without comment.

3.      *Discussion*

"*Graham* established that the Eighth Amendment prohibits juvenile offenders convicted of nonhomicide offenses from being sentenced to life without parole." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1727 (2017) (per curiam) (citing 540 U.S. at 75); *accord Montgomery v. Louisiana*, 136 S. Ct. 718, 727 (2016) (citation omitted).

Here, the trial court sentenced petitioner to a mandatory minimum term of 25 years' imprisonment. The state contends, and petitioner does not dispute, that he "is eligible for release when he is 43½ years old." [ECF 10, p. 9 (citation omitted)]. Thus, because the trial court did not sentence him to life without parole, petitioner cannot show that the postconviction court unreasonably applied *Graham. See also United States v. Mathurin*, 868 F.3d 921, 935-36 (11th Cir. 2017) (defendant

"eligible for release approximately 43.4 years after the sentencing date . . . . has 'some meaningful opportunity to obtain release' during his lifetime[] as required by *Graham*" (citing 540 U.S. at 75)).

In sum, the state courts' rejection of claim 1 was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

B.    Claim 2

Claim 2 is procedurally defaulted.

### 1.    *Relevant Factual Background*

During jury selection, the court asked the prosecutor to read a list of potential witnesses. [ECF 12-1, p. 27]. Regarding potential civilian witnesses, the prosecutor stated "Rashad Ceasar." [*Id.* p. 28].

After Walker testified, defense counsel stated that "Mr. Ceasar" was present and wanted to testify, or at least make a proffer, that he was in an apartment with petitioner when the shooting occurred. [*Id.* p. 354]. Counsel stated, "I know it's a late thing to do, but he has been talking to me about that on the phone this morning and . . . late yesterday." [*Id.*]

The prosecutor objected, stating: "[H]e's not on my witness list. I have Althea Ceasar listed. And [petitioner] gave a statement saying who he was allegedly with

and it wasn't this guy. So I have that on tape." [*Id.* pp. 355-56]. As discussed above, the court denied the request.

2.    *Petitioner's Argument*

The vast bulk of the allegations supporting this claim are in petitioner's reply. [ECF 16, pp. 5-8]. There, petitioner contends that counsel ineffectively failed to investigate and call "Jarawale Rishawn Ceasar-Nation and Michelene [Ceasar]."[3] Petitioner contends that Ceasar-Nation is the "Mr. Ceasar" who, according to counsel, wanted to provide an alibi at trial. *See* [*id.* p. 6]. *See also* [ECF 11-1, p. 195]. Likewise, petitioner contends that Michelene was "at trial and willing to testify on petitioner's behalf," [ECF 16, p. 6], though no document in the record supports this assertion.

Petitioner contends that he wrote counsel seven months before trial and told him about these alibi witnesses and the substance of their testimony, which was that petitioner was at home with them when Walker was shot. [*Id.* pp. 7-8]. Petitioner contends that he first learned at trial that counsel had not investigated or prepared to call them. [*Id.* p. 7].

Petitioner faults counsel's failure to "depose them to ascertain and determine what the nature of their testimony for trial would have been had they been called." [*Id.* p. 5]. He also faults counsel's failure to present them as witnesses. [*Id.* p. 6].

---

[3] The surname "Ceasar" or "Caesar" is inconsistently spelled throughout the record.

### 3.    *State Court Decision*

The postconviction court held that petitioner could not show deficiency or prejudice on this claim. [ECF 11-1, p. 227]. In support, it cited the portion of the trial transcript cited above in the factual background. [*Id.* p. 226]. Also, the court deemed dubious petitioner's assertion that he mailed counsel a letter about his alibi witnesses seven months before trial. [*Id.* p. 227]. It reasoned that there was "nothing to substantiate [petitioner's] claim that he sent it to [counsel]" and that the "letter could have been simply written [when petitioner] created his post-conviction motion." [*Id.*] As noted, petitioner did not appeal the postconviction court's denial of this claim.

### 4.    *Discussion*

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each* appropriate state court . . . , thereby alerting that court to the federal nature of the claim." *Id.* (emphasis added) (citations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round

of the State's established appellate review process."). "In Florida, exhaustion usually requires not only the filing of a [Fla. R. Crim. P.] 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (per curiam) (alteration in original) (citation omitted).

Here, the record shows, and petitioner concedes, that he failed to appeal the postconviction court's denial of this claim. Thus, he failed to exhaust it.

A claim is procedurally defaulted for purposes of federal habeas review 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present [the claim] in order to meet the exhaustion requirement would now find the claim[ ] procedurally barred.'" *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 956-57 (11th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

The procedural rule under which the state court would find the claim barred must be "adequate and independent." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003). "State rules count as adequate if they are firmly established and regularly followed." *Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (per curiam) (citation omitted). Usually, state rules count as independent if their application does not turn on a federal constitutional question. *See Frazier v. Bouchard*, 661 F.3d 519, 525 (11th Cir. 2011) (citation omitted).

Claim 2 is also procedurally defaulted. Petitioner cannot return to the postconviction court and re-raise the claim in a Rule 3.850 motion; the postconviction court would reject it as untimely. The Florida Supreme Court dismissed the petition for review on October 27, 2016. Therefore, because October 27 fell on a Saturday, petitioner had until October 29, 2018 to file any Rule 3.850 motion. *Compare* Fla. R. Crim. P. 3.850(b) (defendant generally must file a Rule 3.850 motion within two years after his "judgment and sentence become final"), *with Mullins v. State*, 974 So. 2d 1135, 1138 (Fla. 3d DCA 2008) ("two-year period for filing a postconviction motion pursuant to Rule 3.850(b) [starts] to run from . . . the date the Florida Supreme Court dismisse[s] [a defendant's] petition for discretionary review"). The Eleventh Circuit has held that Rule 3.850's two-year statute of limitation is adequate and independent. *See Johnson v. Singletary*, 938 F.2d 1166, 1174 (11th Cir. 1991) (en banc).

Furthermore, this claim would be procedurally defaulted even if petitioner could circumvent a time bar by successfully petitioning the Fourth District for rehearing. For an "issue not raised in an initial brief is deemed abandoned." *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011) (citation omitted). This rule is independent and adequate. *See Hernandez v. Jones*, No. 15-10184-CIV, 2017 WL 6558606, at *9 n.10 (S.D. Fla. Mar. 27, 2017) (citation omitted), *report and recommendation adopted*, No. 15-10184-CIV, 2017 WL 6604570 (S.D. Fla. Oct. 24, 2017);

*Stoudmire v. Tucker*, No. 3:09CV48/MCR/EMT, 2011 WL 5426239, at *9-10 (N.D. Fla. Aug. 30, 2011) (collecting cases), *report and recommendation adopted*, No. 3:09CV48/MCR/EMT, 2011 WL 5442091 (N.D. Fla. Nov. 9, 2011).

Petitioner contends that he has shown "cause and prejudice" sufficient to overcome the procedural default of this claim. [ECF 16, p. 8]. *See generally Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." (citations omitted)). In support, however, petitioner simply contends that claim 2 meritorious. [ECF 16, pp. 8-9]. Thus, he has not alleged "[c]ause for [the] procedural default," which requires a showing that "something external to [] petitioner" that "cannot fairly be attributed to him" "impeded [his] efforts to comply with the State's procedural rule." *See Maples v. Thomas*, 565 U.S. 266, 280 (2012) (second alteration in original) (citation omitted).

Nor can petitioner show prejudice. "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). Here, had petitioner raised this claim on appeal, the Fourth District almost assuredly would have affirmed the postconviction court's denial of

it. The prosecutor stated at trial that petitioner made a recorded statement regarding his alibi and that Mr. Ceasar was not him/them. Furthermore, defense counsel stated that "he has been talking to me about that on the morning this morning and . . . late yesterday," indicating that petitioner had first proposed providing Mr. Ceasar as an alibi witness on the eve of trial. Additionally, the state court questioned the credibility of petitioner's contention that he notified counsel of his alibi seven months before trial, and petitioner's self-serving assertions to the contrary fail to show otherwise. Moreover, contrary to petitioner's contention, there is no evidence that Michelene was prepared to testify at trial. Finally, petitioner would not have been able to show prejudice on his ineffectiveness claim in light of the state's evidence. *See supra* Part I(B). The jury necessarily found Walker's testimony credible in convicting petitioner, and petitioner's description of his alibi's contrary testimony is vague and conclusory.

In sum, claim 2 is procedurally defaulted.[4]

---

[4] As noted, a "fundamental miscarriage of justice" may excuse a procedural default. "A fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892 (citation omitted). Any contention that petitioner is "actually innocent" would fail because petitioner has not provided "'new reliable evidence'" of his innocence. *See Rich v. Dep't of Corr. State of Fla.*, 317 F. App'x 881, 882 (11th Cir. 2008) (per curiam) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

## IV.   Evidentiary Hearing

"[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated [on the merits] by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295.

Here, claim 1 was adjudicated on the merits in state court, and petitioner has not demonstrated an error in clearly established federal law or an unreasonable determination of fact regarding this claim. Thus, an evidentiary hearing is improper on claim 1.

An evidentiary hearing is also improper on claim 2. Because it is unexhausted and procedurally defaulted, "the record . . . precludes habeas relief[.]" *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Likewise, the court could "adequately assess [petitioner's] claim without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court

denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2254 Cases.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). By contrast, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, in view of the entire record, the undersigned denies a certificate of appealability. If petitioner disagrees, he may so argue in any objections filed with the district court. *See* Rule 11(a), Rules Governing § 2254 Cases ("Before entering

the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## VI.   Recommendations

As discussed above, it is recommended that petitioner's § 2254 petition [ECF 1] be DENIED.

It is further recommended that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985).

SIGNED this 6th day of August, 2020.

UNITED STATES MAGISTRATE JUDGE

Anthony McIntyre
I45239
Hamilton Correctional Institution-Annex
Inmate Mail/Parcels
10650 SW 46th Street
Jasper, FL 32052
PRO SE

Luke Robert Napodano
Office of the Attorney General
1515 North Flagler Drive
Suite 900
West Palm Beach, FL 33401
561-837-5000 x179
Email: luke.napodano@myfloridalegal.com

Noticing 2254 SAG Broward and North
Email: CrimAppWPB@MyFloridaLegal.com